AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

_____ DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

V.

DAVID SAMUEL TORRES
5181 Northwest 4 Terrace
Miami, FL

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 2004 M 0549-RBC

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __December 10, 2004__ in __Middlesex__ county, in the _____ District of __Massachusetts__ defendant(s) did, (Track Statutory Language of Offense) transmit in interstate commerce communications containing threats to injure the person of another, to wit: Jennifer Chong,

in violation of Title __18__ United States Code, Section(s) __875(c)__.

I further state that I am a(n) __Special Agent, FBI__ and that this complaint is based on the following
Official Title

facts:

See attached affidavit

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

12-15-2004  at 10:24 am        at        Boston, MA
Date                                      City and State

ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE        _____
Name & Title of Judicial Officer              Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## AFFIDAVIT OF ROBERT RICE

I, Robert Rice, having been duly sworn, do hereby depose and say, that:

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed for ten months. I am currently assigned to the Boston Violent Crimes Task Force within the Boston Division of the FBI at Boston, Massachusetts. The Task Force is comprised of personnel of the FBI, Massachusetts State Police, and the Boston and Cambridge Police Departments.

2. I am aware that 18 U.S.C. § 875(c) makes it a crime for anyone to transmit in interstate or foreign commerce, including by e-mail via the Internet, any communication containing any threat to injure the person of another.

3. I make this affidavit in support of a criminal complaint charging DAVID SAMUEL TORRES, date of birth of 05/30/81, who resides at 5181 Northwest 4 Terrace, Miami, Florida, with transmitting in interstate commerce threats to harm one Jennifer Lindsey Chong. The facts stated herein are based on my own personal involvement in this investigation, and my discussions with other law enforcement officers also involved in the investigation. In submitting this affidavit, however, I have not included each and every fact known to me

1

about the investigation, but only those facts which I believe are sufficient to establish the requisite probable cause.

4. On December 10, 2004, I interviewed Jennifer Lindsey Chong at the Boston office of the FBI. During that interview, she provided the following information:

    a. Chong is twenty years old. She grew up in Miami, Florida, where her family still resides. She is currently enrolled as a student at Tufts University in Medford, Massachusetts. She is in her junior year. She is employed part-time as well by Tufts University in its American Studies Program.

    b. Chong met DAVID SAMUEL TORRES in Miami, Florida during the summer of 2002. The two began dating shortly afterward. Chong and TORRES dated on and off for approximately two years before ending their relationship in April of 2004.

    c. During their two-year relationship, TORRES was verbally and physically abusive to Chong and prone to violent outbursts of temper. For example, on one occasion Chong and TORRES were driving in her car when TORRES became angry with Chong and punched the windshield, breaking it. On several other occasions, TORRES grabbed Chong and violently shook her, leaving bruises on her hands. Although behavior of this sort

surfaced early on in her relationship with TORRES, Chong was afraid of him and did not know how to break up with him.

  d. In April 2004, TORRES flew to Boston to visit Chong at Tufts University. Chong paid for TORRES' airline ticket. The two broke up during this visit but still maintained contact with one another.

  e. At approximately 3:00 A.M. on August 7, 2004, while Chong was home in Miami for the summer, she received a telephone call from TORRES. During the ensuing conversation, TORRES stated, "I am going to find your car and break your windshield." Later that morning, Chong saw that the windshield of her car had been broken.

  f. Chong returned to Tufts University in the fall of 2004. On October 31, 2004, TORRES flew up to Boston from Miami, ostensibly to see Chong in order to pay her back money he owed her for traffic and airline tickets and various other items for which she had paid while they were dating. Chong did not refuse TORRES' visit because she had hoped to gain closure on their relationship and remain friends. During his visit, TORRES told Chong that he wanted to renew their romantic relationship. When Chong refused, he became angry and verbally abusive.

  g. On November 2, 2004, the day of TORRES'

3

scheduled return flight to Miami from Boston, TORRES refused to leave Chong's Tufts University dormitory room unless Chong agreed to escort him to the airport. When Chong refused, TORRES became angry and the two began screaming at one another. During this argument, TORRES picked up a chair and threw it against the wall of Chong's dormitory room. Joanna Xylas, a friend of Chong, heard the commotion, walked down to Chong's room and told TORRES he had to leave. TORRES reiterated his assertion that he would only leave if Chong went with him to the airport. At this point Chong agreed to TORRES' demand. Once they arrived at the airport, TORRES told Chong that he would not leave Boston until she agreed to resume their relationship. Chong refused and attempted to walk away, at which point TORRES stepped in front of her and stopped her from getting on the MBTA Train. Chong was eventually able to fight past TORRES to get on the train, leaving him behind at the airport. He apparently flew back to Miami as scheduled.

  h. Since TORRES' return to Miami on November 2, 2004, he has been making telephone calls and sending instant message e-mails to Chong that are obscene and threatening in nature. The high volume of calls to Chong's cellular telephone have forced her to change her telephone number

twice. TORRES has also made numerous telephone calls to her dormitory room, which has forced Chong to change her dormitory room once. In many of TORRES' telephone calls and instant messages he has made threats towards Chong's safety, the safety of her family, and friends, and the safety of one of her ex-boyfriends. TORRES has also telephoned some of Chong's friends, family members, and co-workers, sometimes scores of times a day, day demanding that they provide him with her new cellular telephone number.

    i. Chong plans to return home to Miami for the Christmas holidays and school intercession. TORRES is aware of those plans.

    5. Subsequent to my interview of Chong, she provided to me copies of several printouts containing instant messages she received from TORRES between December 5, 2004 and December 10, 2004. Among the statements by TORRES contained in a spate of instant messages I reviewed that TORRES sent to Chong on December 12, 2004 were the following:

    a. "U FUCKING PSYCHO  UR DEAD WHEN YOU COME DOWN HERE!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!  DON'T EVEN COME DOWN HERE"

    b. "I GOING 2 LEAVE U COMA TOAST  U'LL FEEL IT"

    c. "I FEEL SO SORRY 4 U  IM GETTING REVENGE NOW 4

5

SURE   LOL   CALLING THE FBI   LOL   WHAT A STUPID HOE UR   NOW I KNOW UR REALLY FUCKING CRAZY!"

  d. "u better have a bodyguard with u down here in Miami b/c ur in danger around here  ur a fucking target u no good hoe"

  e. "i feel bad for ur family and friends bc they're going 2 suffer 2 bitch  its not only u but everybody around u"

  f. "ur in danger u stranger   ill rearrange u  u stupid fucking hoe  u don't know who ur fucking with so im going 2 show u who ur fucking with!!!!!!!!!!!!!!!!!!!!!!!!!!"

  6. On December 10, 2004, I interviewed Joanna Xylas at the Boston office of the FBI. During that interview, she provided the following information:

  a. Xylas is a student at Tufts University and is in her sophomore year. She has known and been friend of Chong since last school year. They currently live in the same dormitory at Tufts University.

  b. Xylas knows TORRES through Chong.

  c. Since early November 2004, Xylas has been receiving approximately fifty to sixty telephone calls per day on her cellular telephone from TORRES asking her for Chong's cellular telephone number. These telephone calls from TORRES typically start at 7:00 A.M. and last until 2:00 A.M. the

6

following morning.

    d. According to the caller ID feature on Xylas' cellular telephone, most of the telephone calls she has received from TORRES were made from telephone number (305) 510-9158, which she knows to be TORRES' cellular telephone. The remainder of the calls appear as "private call" on her caller ID. TORRES has been leaving obscene and harassing messages on Xylas' cellular telephone voice mail.

    7. On December 11, 2004, I spoke via telephone with Gene Chong, Jennifer Chong's father. He advised me that he has received a large number of telephone calls from TORRES on his cellular telephone and home telephone in Miami. In those calls, TORRES has made several threatening statements to Gene. Gene stated that he was afraid for his safety and that of his family.

    8. I have reviewed a written statement provided by Lieutenant Detective Charles Lonero of the Tufts University Department of Public and Environmental Safety. Lonero informed the FBI that recently TORRES began making repeated telephone calls to the American Studies Program at Tufts University, Chong's place of employment, asking to speak with Chong. Lonero was informed by employees in that department that the calling became so harassing that they had difficulty

performing their work duties during the week of December 6, 2004.

9. I have reviewed a police report completed by the Miami-Dade Police Department on November 13, 2004. It pertains to a complaint that Chong made to that police department. According to the report, Chong related that on November 13, 2004, while at Tufts University, she received over thirty telephone calls from TORRES. She further related that after one telephone call she asked him not to call her anymore, to which TORRES replied "You are not safe here in Miami and neither is your family."

10. Based on the foregoing, there is probable cause to believe that on various dates to include December 10, 2004, DAVID SAMUEL TORRES did transmit in interstate commerce communications containing threats to injure the person of another, to wit: Jennifer Chong, in violation of 18 U.S.C. § 875(c).

ROBERT RICE
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this fifteenth day of December, 2004.

_____
ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE

**HON. ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE**
United States District Court
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 6420
Boston, Massachusetts 02210